UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISON

MARK JONES,

      Plaintiff,

v.

BUDGET EQUIPMENT, INC. and
SCOTT DAIAGI,

      Defendants.
_____/

CASE NO: 21cv61149

## **COMPLAINT**

Plaintiff, MARK JONES ("Jones" or "Plaintiff"), an individual by and through undersigned counsel, hereby file this lawsuit against Defendant, BUDGET EQUIPMENT, INC. ("Budget"), and Defendant, SCOTT DAIAGI ("Daiagi") (or collectively, "Defendants") and in support thereof, states as follows:

### **PARTIES**

1. Jones is a resident of Oklahoma.

2. Budget is a corporation registered to conduct business in the State of Florida.

3. Daiagi is resident of Broward county, Florida, and resides at 624 Oleander Drive, Hallandale Beach, Florida 33009.

4. At all times relevant, Daiagi, as President, exercised significant control over Budget's day-to-day operations and financial accounting, specifically as it related to the Plaintiff, Jones.

## JURSIDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), because there is complete diversity of citizenship between MARK JONES, SCOTT DAIAGI, and BUDGET EQUIPMENT, INC, and because the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

6. Venue in this Court is appropriate, pursuant to 28 U.S.C. §§1391(b)(2), and (b)(3).

## FACTUAL ALLEGATIONS

7. On about August 2, 2017, Budget sold to Jones, a 2005 Model 10044- 54 Lull Telehandler, bearing Serial Number 0160004385 (the "telehandler"), and delivered the telehandler to Jones.

8. The total delivered price was $41,490.00, being $39,500.00 for the telehandler and $1,990.00 for freight.

9. The Defendants listed said telehandler on eBay, where the Defendants represented that the telehandler was fully operational and that it was totally ready to use, after its renovation, repair and inspection in Budget's shop facility.

10. Budget, by and through its representatives, also made verbal representations to Jones of such condition of the telehandler.

11. Budget, by and through its representatives, made representation to Jones that Budget had a team of mechanics that inspected every telehandler Budget sells, and that any problems are repaired before the units are sold.

12. Despite these representations, when Mr. Jones received the unit, it had the following defects:

    a.    The forks of the telehandler would not tilt up and down. Jones detected a wiring issue, and this was corrected.

    b.    The boom on the telehandler was leaking hydraulic oil, and when the boom was extended and tilted down, oil would run out of the boom.

    c.    The telehandler would not shift into 3rd or 4th gears. Jones contacted the Lull dealer in Oklahoma City, and was told to check a sensor on the back-left side of the boom. He located the sensor and found that it had been taped over and painted, where it was unable to make contact with the boom, preventing the telehandler from shifting into 3rd or 4th gears. Mr. Jones removed the tape and paint, and once the sensor could contact the boom, it would shift into 3rd and 4th gears, but in those gears the front differential was grinding and the four-wheel drive did not work on the front axle of the telehandler.

13.    These obvious defects in the telehandler Budget sold Mr. Jones should have been detected by any effort on Budget's part to inspect the telehandler and sell it as advertised.

14.    The misrepresentations by Budget, by and through it representatives, are violations of Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") by making misrepresentations to Jones to induce Mr. into the buying the telehandler from Budget.

15.    When Jones notified Budget of the mechanical problems with the telehandler, Budget told him that Budget would refund to him the full purchase price of the telehandler, upon return of the telehandler to Budget.

16.    On September 5, 2017, Jones advised Budget by email that he was ready to make the trip to return the telehandler to Budget's business, but he was concerned about hurricane Irma

3

affecting the Florida area, and he decided to wait until the effect of the hurricane passed to make the long trip to Florida with the telehandler.

17. On October 3, 2017, Mr. Jones delivered the telehandler back to Budget's business.

18. At that time, Budget, by and through its representatives, and Jones discussed the mechanical issues with the telehandler and Mr. Jones agreed to allow Budget to repair the unit and make it fully operational as represented, and ship the telehandler back to Jones in Oklahoma, with all cost for the repairs and freight to be borne by Budget.

19. Budget and Jones further agreed in writing that if Budget could not repair the telehandler to make it fully operational, that Budget would return the full purchase price of $39,500.00 to Jones.

20. October 3, 2017, left the telehandler with Budget.

21. Jones heard nothing back from Budget for over a month, and on November 14, 2017, he emailed Budget and asked about the status of the telehandler. He received no reply. For months Budget made no reply to Mr. Jones, and on March 21, 2018, Jones sent an email to Budget, in which he asked about the status of Budget's repair on the Lull or the return of his purchase price, as agreed on October 3, 2017.

22. On March 23, 2018 Budget, by and through it representatives, responded by email, stating that Budget had other telehandlers that were coming out of Budget's service department, and that Budget was not able to make the needed repairs to the Lull telehandler that Jones had returned to Budget on October 3, 2017.

23. Budget went on to state that if Jones was not interested in a different telehandler, that Budget would go ahead and refund to Jones his full purchase price of the Lull telehandler he paid for.

24. On March 27, 2018, Mr. Jones informed Budget by email that he did not want any of the other telehandlers, and that he wanted Budget to just make the full refund of his purchase price.

25. Budget never refunded the full purchase price of $39,500.00 to Jones.

26. On January 19, 2021, Jones made written demand to Budget in the sum of $41,490.00, and that Budget reimburse him for the costs and time in returning the telehandler to Budget from Oklahoma to Budget's Florida business location, being the sum of $1,500.00. The total amount to due to Jones is the sum of $42,990.00, which was demanded to be paid within 30 days of Budget's receipt of the demand, or suit would be filed against Budget for such damages in the sum of $42,990.00, reasonable attorney's fees and costs of court and under §772.11 (1) (2020) *Fla. Stat*. Budget did not respond to Plaintiff's demand.

27. Daiagi, as president of Budget, adopted and ratified the misrepresentations made by its agents and/or representatives to induce Jones to enter into a subsequent agreement.

28. Daiagi, as the president of Budget, conspired with its agents and representatives to defraud Jones and Daiagi orchestrated the false representations made to Jones and had also allowed his name to be associated with the representations made.

29. As president of Budget, Daiagi had knowledge of facts alleged herein and the authority to issue a refund to Jones but ratified its' agents and/or representatives' false representations to refund $42,990.00 to Jones.

30. All conditions precedents have been performed or excused prior to filing this instant action.

## COUNT I – CIVIL THEFT

31. Jones repeats and realleges each of the foregoing allegations in paragraphs 1 – 30 as if fully set forth fully herein.

32. Jones has been injured by a criminal act committed by Budget and Daiagi, to wit, the unlawful conversion of Jones' monies tendered in exchange for goods never delivered, which constitutes a "theft offense" as defined by § 812.01485; and § 812.012(3)(c) *Fla. Stat*.

33. At the time that Budget and Daiagi unlawfully converted Jones' property, Jones owned the subject funds.

34. Budget and Daiagi Jones, by and through the fraudulent actions and omissions of its agent(s), did unlawfully and knowingly use or endeavor to use Plaintiff's $42,990.00 and did knowingly deprive or endeavor to deprive Jones of his money with the intent to temporarily or permanently deprive Jones of his right to the money and benefit thereof, all for Defendant(s) own use, or the use of any person not entitled thereto, in violation of Florida Statute §812.014.

35. The Defendants, by and through the fraudulent actions and omissions of its agent(s), did unlawfully and knowingly use or endeavor to use the Plaintiff's property, and did knowingly deprive or endeavor to deprive Plaintiff of her property, with the intent to deprive Plaintiff of its right temporarily or permanently to the money and benefit thereof, all for defendants' own use, or the use of any person not entitled thereto, in violation of Florida Statute §812.014.

36. The Defendants failed to respond to the written demand referenced attached hereto as Exhibit A.

37. The Plaintiff has retained the undersigned attorney and obligated himself to pay the undersigned a reasonable fee.

38. The Defendants should be obligated to pay a reasonable attorney fee of $5,000.00 directly to Jason Brian Phillips, Esq. and J. Brian Phillips, P.A. Attorney at Law in the event a default judgment is entered against the Defendants.

WHEREFORE, the Plaintiff respectfully requests the Court to enter a judgment against the Defendants, jointly and severally, in the amount of $128,970.00 representing treble damages including an award of reasonable attorney's fees and costs pursuant to § 772.11, Florida Statutes.

### COUNT II - CONVERSION

39. Jones repeats and realleges each of the foregoing allegations in paragraphs 1 – 30 as if fully set forth fully herein.

40. At the time that Defendants unlawfully converted Jones' property, Jones' owned the subject funds.

41. The Defendants converted Jones' funds by a wrongful act or false representation.

42. Jones has suffered damages as a result of Daiagi's civil theft.

43. The Plaintiff has retained the undersigned and obligated himself to pay the undersigned a reasonable fee.

44. The Defendant should be obligated to pay a reasonable attorney fee of $5,000.00 directly to Jason Brian Phillips, Esq. and J. Brian Phillips, P.A. Attorney at Law in the event a default judgment is entered against the Defendants.

WHEREFORE, the Plaintiff demands judgment against the Defendants, jointly and severally for damages in the amount of $42,990.00, plus treble punitive damages, and attorneys' fees, and costs, together with such other, and further, relief as the Court deems just, equitable and proper.

## COUNT III – UNJUST ENRICHMENT

45. Jones repeats and realleges each of the foregoing allegations in paragraphs 1 – 30 as if fully set forth fully herein.

46. By unlawfully converting Jones' funds, a benefit was conferred on the Defendants.

47. The Defendants voluntarily accepted and retained the benefit conferred.

48. The circumstances are such that it would be inequitable for the Defendants to retain the benefit without paying the value thereof.

WHEREFORE, the Plaintiff demands judgment against the Defendants, jointly and severally for damages in the amount of $42,990.00, including punitive damages, and attorneys' fees, and costs, together with such other, and further, relief as the Court deems just, equitable and proper.

Dated June 2, 2021

/s/ Jason Brian Phillips, Esq.
By: _____

Jason Brian Phillips, Esq.
Florida Bar No: 89841
J. BRIAN PHILLIPS, P.A.
P.O. Box 621176
Orlando, FL 32862-1176
Tel. (407) 237-0192
jason@jbrianphillipsesq.com
TRIAL COUNSEL FOR THE PLAINTIFF